Reed, J.
This suit was instituted by the plaintiff in error on October 7th, 1887. It appears by the allegations in the *14 complaint that for some years prior to and on the 8th day of February, 1887, the defendant in error was the owner of eighty acres of land situated under the line of The Northern Colorado Irrigation Company’s ditch, and that on the 23d day of June, 1884, the defendant in error entered into a contract with the corporation owning the ditch, for water to irrigate the land. By the terms of the contract defendant in error was to pay to the corporation fourteen hundred dollars for a right to buy water for the land, and was to pay annually for the water supply for irrigating purposes an indefinite sum, to be fixed thereafter, varying from one dollar and a half to four dollars an acre. The fourteen hundred dollars for the water-right was to be paid in different instalments of interest and principal, at various times, from the date of the making of the contract to June, 1891. On the 8th day of February, 1887, partial payments had been made for the water-right, and, it is alleged, in order to perfect and secure the title to it, further payments to the amount of about $1,100 were necessary, and on that day the plaintiff in error obtained an option on the property for a -fixed time at the price of $10,000, and to secure such option made a payment, of $500, and a memorandum or contract was entered into, as follows:—
“ Denver, February 8, 1887.
“ In consideration of one dollar, ($1.00), to me in hand paid by H. B. Chamberlain, the receipt whereof is hereby acknowledged, I hereby agree to sell to him or his assigns, at any time prior to March 8th, the following described property: The north half of southwest quarter section twenty (20), township four, (4), south, range sixty-seven west, for the sum of ten thousand dollars ($10,000.00), payable as follows: $500.00 down, $4,500.00($2,500.00in sixty days and $2,000.00 in thirty days), and the balance of five thousand dollars (5,000.00) in two years at eight (8) per cent per annum.
“ Mark--Amter.”
On the 8th day of March following, plaintiff in error concluded the purchase of the land for one Charles'B. Wood, *15 who paid the whole consideration, and to whom a deed for the same was made.
It is not shown by the testimony that at am time prior to the convejance any contract was made between the parties whereby the contract for water of the defendant in error with the ditch company was to be assigned, transferred or. sold to the plaintiff in error, or was to pass with the land under the option. It was shown by the testimony that the deed was accepted and the trade consummated without any assertion of claim on the part of the plaintiff in error to have the water-right transferred.
It will be observed that there is nothing' in the written contract referring to the matter in controversj''. The land was sold, by one Millington, as agent of .the owner. The testimony in regard to the understanding of the parties with reference to the water-right is very meagre and contradictory. Plaintiff in error testified that Millington, the agent, “ stated that the land had been cultivated the year previous, and that it had the English Ditch water-right, which was included in the purchase price.” This appears to have been all that was said .on the subject, and even this was not embraced in the writing.. It is very indefinite. It does not show whether the contract, as it then stood between defendant and the ditch company, was to be transferred, or whether it was to be secured and final payments made by the buyer or seller. Where nothing is said with regard to it, under such circumstances, it is presumable that the future payments are to be made by the purchaser, else there would have been some contract or obligation on the part of the seller to pay in future; or if the understanding had been that the seller should mate the payments it is to be presumed the buyer would have investigated the matter and retained the amount from the purchase money.
The strongest construction the language of the agent can really bear is, that the land was susceptible of cultivation by the use of water from the company’s ditch, and that the *16 right to the water for the land was secured, and such right would go with the land.
But this cannot he construed as a promise to pay the money to perfect the purchase of such right. The contention of counsel of plaintiff in error that the water was appurtenant and;went with the land, and consequently there being a failure of title as to part, the money could be recovered, cannot'be sustained for two or three very good reasons. First, there was no conveyance of the right and no covenant. Second, if 'such had been the case plaintiff in error could not recover the money, as neither land nor water was conveyed to hiiri. It could, if recoverable at all, be recoverable only at the suit of the grantee. Wood having been the purchaser and grantee direct from the defendant in error, and the paper' given the plaintiff in error having been but an option, he' could acquire no right individually to the water, separated fr'óm the land, unless by showing that he had been damnified arid had been compelled to pay the money to make good Wood’s 'title, and therefore had a right to have it refunded. It'is' not pretended that such was the fact. In any view I can take of it plaintiff failed to make a case which would warrant a recovery. It follows that the judgment of nonsuit was right and should be affirmed.

Affirmed.